# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-23-00522-CV

---

**Yonghui "Richard" Zhu, Appellant**

**v.**

**VivaTech Electronics, LLC; Blessed Land Development, LLC; Rongchuan Zheng; Luke Secora; and Josh Steelman, Appellees**

---

**FROM THE COUNTY COURT AT LAW NO. 1 OF TRAVIS COUNTY
NO. C-1-CV-20-003843, THE HONORABLE TODD T. WONG, JUDGE PRESIDING**

---

### M E M O R A N D U M   O P I N I O N

This appeal arises from a dispute between the members of a closely-held limited liability company, Vivatech Electronics, LLC. On the one side, there is the company's organizing member, Yonghui "Richard" Zhu. And on the other side, there are two other company members, Joseph Steelman and Blessed Land Investment, LLC, and Blessed Land's owner, Rongchuan "Albert" Zheng (collectively, Appellees).[1]

The dispute arose a few years after Vivatech's formation, when Zhu reviewed company records, discovered that Vivatech had been making hundreds of thousands of dollars in payments to Blessed Land and Zheng, demanded that he be bought out and reimbursed for various expenses he had allegedly incurred years earlier, and transferred funds from Vivatech's

---

[1] A third company member, Luke Secora, is aligned with Appellees and is himself an appellee in this appeal. But, as explained further below, Secora's involvement is minimal, so we will refer to him separately and only as necessary.

bank account to his personal bank account pending resolution of his demands. Blessed Land filed suit against Zhu, asserting derivative claims for theft and conversion. And Zhu filed suit against Appellees, including a declaratory-judgment action and individual and derivative claims for breach of fiduciary duty and theft.

Appellees filed motions for summary judgment on all of Zhu's claims. Zhu nonsuited his theft claims and declaratory-judgment claims, and the trial court granted summary judgment on Zhu's remaining individual and derivative claims for breach of fiduciary duty. Blessed Land's derivative claims for theft and conversion were then tried to a jury, which found in Blessed Land's favor. The trial court rendered final judgment awarding damages to Blessed Land on its claims for theft and conversion and attorney's fees on its claim for theft. The trial court further awarded Appellees their attorney's fees as prevailing parties on Zhu's breach-of-fiduciary-duty claims and nonsuited claims (which the trial court found Zhu had strategically nonsuited to avoid summary judgment) and as sanctions against Zhu and his trial counsel.

Zhu now appeals, raising various issues. For the reasons stated below, we will reverse the parts of the trial court's judgment that dismiss Zhu's derivative claims for breach of fiduciary duty against Blessed Land and Steelman and order that Blessed Land and Steelman are entitled to an award of attorney's fees as the prevailing parties on Zhu's derivative claims for breach of fiduciary duty. We will otherwise affirm the trial court's judgment and remand the case for further proceedings consistent with our opinion, including further proceedings on Zhu's derivative claims for breach of fiduciary duty against Blessed Land and Steelman and a new hearing on attorney's fees.

**Background & Procedural History**

*Zhu forms and raises funds for Vivatech*

Zhu formed Vivatech in March 2017. In the Certificate of Formation Zhu filed with the Secretary of State, Zhu designated Vivatech as an entity to be "managed by managers," who Zhu identified as himself, Josh Steelman, and Luke Secora.

Vivatech was formed for the two related purposes of (1) buying and reselling consumer electronics and (2) manufacturing and selling bubble wrap and bubble mailers for use in shipping. Steelman and Secora had prior experience in the resale of consumer electronics, and Zhu suggested that manufacturing bubble wrap and bubble mailers to protect goods during shipping was a good business idea. Zhu owned a company in China and offered to use his sources in China to acquire the bubble-wrap machine.

Because Vivatech lacked the funds necessary to acquire the machines, Zhu solicited an investment from an acquaintance from church, Rongchuan "Albert" Zheng. Zheng and his wife, Yujin "Ellen" Zhao, owned another closely-held Texas limited-liability company, Blessed Land Investment, LLC. Ultimately, Blessed Land invested $100,000 in Vivatech for a 25% interest in the company, and Zhao loaned an additional $100,000 to Vivatech. The loan agreement between Zhao and Vivatech was prepared by Zhu and bore interest at the rate of 5% per annum.

*Zhu, Steelman, Secora, and Blessed Land execute the Vivatech Company Agreement*

In June 2017, Zhu, Steelman, Secora, and Blessed Land entered into the Shareholder Agreement of Vivatech Electronics LLC (the Company Agreement), which Zhu put together using a form he obtained from the internet.[2]

Under the Company Agreement, Zhu, Steelman, Secora, and Blessed Land were identified as Vivatech's "Shareholders" and "the sole Directors and Officers of the Corporation." Zhu, Steelman, and Secora each agreed to contribute $30,000 in cash for a 25% interest in Vivatech, while Blessed Land agreed to contribute the $100,000 discussed above for a 25% interest in Vivatech. According to Zhu, Blessed Land received the same interest as the other members despite contributing over three times as much because Blessed Land was "just the investor," and Zhu, Steelman, and Secora would run the business. Zheng is not a party to the Company Agreement, is not mentioned in the Company Agreement, and has never been a member of Vivatech.

Under the Company Agreement, each Shareholder was designated as a director of Vivatech. The Company Agreement provided that the directors would, "when appropriate," perform certain acts, including:

- determine in good faith the "current assets" of Vivatech for purposes of corporate distributions;

- cause a quarterly report to be sent to the Shareholders not later than 30 days after the close of each quarter to identify and approve any distributions;

---

[2] Although the Company Agreement refers to Vivatech as a corporation and to Zhu, Steelman, Secora, and Blessed Land as its shareholders, Vivatech is, in fact, a limited-liability company. Accordingly, throughout this opinion, we use the terms "shareholder" and "member" interchangeably to refer to the owners of Vivatech. For the same reason, we use the terms "director," "officer," and "manager" interchangeably.

4

- cause Vivatech to maintain the books, records, and other documents required by Texas law; and

- use their best efforts to operate Vivatech in accordance with sound business practices.

The Company Agreement permitted Shareholders to be employed as officers, and it established the roles and duties of three specifics officers: the President, the Vice President, and the Treasurer. However, the Company Agreement did not appoint any particular Shareholder to any particular office, and no Shareholder was ever formally hired to fill any of these positions.

The Company Agreement also permitted Shareholders to make loans to the company, but only "upon approval by all Shareholders and only under the agreed conditions, unless otherwise agreed upon." Repayment of a Shareholder loan would "occur when the Shareholders agree[d] that there [was] enough corporate funds to pay the loan."

The Company Agreement provided that any "modifications" to the agreement had to be "in writing and approved by all Shareholders." After its execution, the Company Agreement was never modified.

### *Vivatech secures a warehouse lease*

In August 2017, Vivatech signed a three-year warehouse lease so it would have enough space to house and operate the bubble-wrap machines. The lease, requiring over $100,000 a year in rent through September 2020, was personally guaranteed by Zhu, Steelman, Secora, and Zheng.

Zhu testified that he helped Vivatech secure the lease by depositing $150,000 of his own funds into Vivatech's account to make it appear to the prospective landlord that

Vivatech could afford the lease. After the lease was signed, Zhu withdrew his personal funds from Vivatech's account.

### *Vivatech purchases inoperable bubble-wrap machines*

In November 2017, Zhu ordered the bubble wrap machines from China. The machines were delivered in late January 2018. Vivatech was never able to operate them successfully.

Without the ability to operate the machines, Vivatech's business consisted solely of the purchase and resale of consumer electronics. Vivatech purchased discounted consumer electronics at auction (typically from big-box retailers, like Best Buy) and resold them online. The proceeds from sales either went directly into the company's PayPal account or its bank account.

### *Zhu stops actively participating in Vivatech*

In June 2018, Zhu decided he no longer wanted to be involved in the company, submitted a letter of resignation, and offered to sell his interest in Vivatech to Steelman and Zheng for $30,000 and a release from all company liabilities, including liabilities for the warehouse lease and loan. Steelman and Zheng rejected Zhu's offer. As Steelman would later explain:

> [T]he business was [operating] at a substantial loss at that point. Every shareholder had taken a hit on their initial investment, and [Zhu] wanted to essentially exit the business with the full amount or actually with more than what he had paid. And so that is why [they] couldn't ever come to an agreement because [they] weren't going to pay him more money than what he initially had invested.

6

After that, Zhu ceased actively participating in the operation of the company.[3]  He quit coming to the office and stopped communicating with the other members.  Although Zhu was no longer involved in the business, he nonetheless remained a member, manager, and signatory to the company bank account, and he retained access to at least some of Vivatech's records, including Vivatech's bank account and PayPal account.

### *Without consulting Zhu, Vivatech borrows money from Zheng and sells inventory on consignment from Blessed Land*

When Zhu resigned, Vivatech still had two years left on its warehouse lease, which Zhu, Steelman, Secora, and Zheng had personally guaranteed.  But, according to Steelman, Vivatech did not have funds to purchase inventory to resell.  So, Vivatech borrowed money from Zheng and began selling products on consignment from Blessed Land, reimbursing Blessed Land at five percent above cost.  Steelman testified that Blessed Land and he made these decisions without consulting Zhu because Zhu was no longer actively participating in the business or communicating with them.

### *Zhu unexpectedly takes money from Vivatech's account*

In the spring of 2020, Zhu reviewed Vivatech's financial records and realized that Vivatech had been writing checks to Blessed Land for "invoices" (which were for inventory Vivatech had sold on consignment) and checks to Zheng for "loans" (which were payments for the money Zheng had personally loaned to Vivatech after Zhu resigned).  He also reviewed several of Vivatech's tax statements and realized that Vivatech's sales had increased

---

[3] Shortly after Zhu stopped participating in the company, Secora resigned and took no active role in Vivatech.

significantly since his departure. From this, Zhu appears to have formed the belief that either Vivatech had become profitable or the other members had been acting underhandedly.

In March 2020, Zhu transferred $25,000 from Vivatech's bank account into his own personal account, leaving Vivatech with $1,408.79, which, according to Steelman, was not enough for Vivatech to cover payroll and rent. Zhu made the transfer unexpectedly and without consulting Steelman or Zheng.

Zhu then sent an email to Steelman and Zheng. In the email, Zhu began by "congratulat[ing]" them on their "successful business so far." He then observed that, while Vivatech's sales over the past two years had "exceeded $1.5 million," he hadn't gotten "a penny from [his] investment" while everyone else had received "significant benefit from Vivatech." Zhu requested that they provide him with various business records and information, including explanations for "any checks written" by them "in the past 2 and a half years." Zhu then demanded reimbursement for $70,000 in various expenses he had allegedly incurred years earlier. Zhu explained that he had "supported Vivatech with [his] financial resources" when Vivatech was in a "difficult financial situation" and that it was now time for Vivatech to pay him back, since Vivatech's situation had gotten "better." Zhu ended the email by advising them that he would retain the $25,000 until he received "a solution and proposal" from them "to resolve the issue."

Steelman then called a member meeting, which was attended by Steelman, Zhu, and Zheng (on behalf of Blessed Land). At the meeting, Steelman and Zheng demanded that Zhu return the $25,000. The next day, Zhu returned $5,000, but he kept the remaining $20,000.

8

*Vivatech sues Zhu*

In July 2020, Vivatech filed this lawsuit against Zhu, asserting claims for conversion, theft, breach of fiduciary duty, and breach of contract and seeking to recover the funds taken by Zhu.

*Zhu takes more money from Vivatech's account*

After Vivatech filed suit, Zhu transferred another $23,000 from Vivatech's account to his account, this time leaving Vivatech with $2,477.69, which, according to Steelman, was again insufficient to cover payroll and rent. As before, Zhu made the transfer unexpectedly and without consulting the other members. Zhu would later explain that he made the second transfer because Steelman and Zheng never provided him with the information he had requested and continued to write themselves checks on Vivatech's account for "invoices" and "loans."

*Zhu sues Steelman, Secora, Blessed Land, and Zheng*

A few days after he made the second transfer, Zhu filed third-party claims against Appellees. Zhu asserted individual and derivative claims for breach of fiduciary duty, alleging that Appellees had breached their fiduciary duties in 21 separate ways, including by engaging in self-dealing, usurping business opportunities belonging to Vivatech, and diverting company assets for personal use and private gain. Zhu also asserted individual and derivative claims for theft, alleging that Appellees had unlawfully appropriated Vivatech assets, sales, revenue, and property for personal gain. Finally, Zhu brought a declaratory-judgment action, seeking over 50 declarations, including declarations that Appellees had breached their fiduciary duties to both him and Vivatech in various ways. Zhu sought monetary damages in excess of $1 million as

well as various forms of equitable relief, including disgorgement of profits, fee forfeiture, and an audit and accounting of all company accounts.

### *Vivatech's counsel withdraws, and Blessed Land steps in and continues to prosecute the claims brought by Vivatech*

After Zhu asserted his third-party claims, Vivatech's counsel withdrew. Blessed Land then stepped in and derivatively asserted and continued to prosecute the claims originally brought by Vivatech.

### *Steelman, Blessed Land, and Zheng move for summary judgment on Zhu's claims*

After more than two years of discovery and on the deadline established in the agreed scheduling order, Blessed Land and Zheng filed a hybrid motion for summary judgment on all Zhu's claims. Steelman also filed a hybrid motion for summary judgment on all Zhu's claims.[4]

### *Zhu defends his breach-of-fiduciary duty claims but nonsuits his other claims*

On the day his responses were due, Zhu nonsuited his declaratory-judgment action and his theft claims against Appellees.[5] He also filed responses to the hybrid motions on his individual and derivative claims for breach of fiduciary duty. In his response, Zhu attempted to raise a fact issue on just one of the 21 allegations of breach he made in his third-party petition, specifically, his allegation that Appellees had breached their fiduciary duties by "[i]mproperly taking and/or diverting large sums of money out of the Vivatech bank account for personal, self-gain without providing [him] with any type of explanation or accounting about

---

[4] Secora also filed a motion for summary judgment.

[5] Zhu nonsuited all his claims against Secora.

how the money [was] being used." In defending this allegation, Zhu focused on the checks written to Blessed Land for the inventory Vivatech had sold on consignment and the checks written to Zheng for the money he had personally loaned to Vivatech. Zhu argued that these checks raised a fact issue on whether Steelman, Blessed Land, and Zheng had breached their fiduciary duties by "making and repaying" the "loans" and "invoices" out of Vivatech's bank account (1) "without obtaining [Zhu's] permission or authorization" and (2) "without providing him with any type of disclosure, explanation or accounting about the loan transactions."

***The trial court grants summary judgment and dismisses Zhu's claims for breach of fiduciary duty***

The trial court heard the hybrid motions and, without specifying the grounds, granted summary judgment on Zhu's remaining individual and derivative claims for breach of fiduciary duty.

***The trial court awards Appellees attorney's fees as prevailing parties on Zhu's nonsuited claims***

Appellees and Secora then moved to recover their attorney's fees on Zhu's nonsuited claims, arguing that the claims were strategically nonsuited without prejudice to avoid an unfavorable ruling on summary judgment. The trial court agreed, granted their motions, and ordered that the amount of fees awarded against Zhu would be determined at a later date.

***A jury finds that Zhu committed theft and conversion***

In February 2023, the sole remaining claims in the suit—claims for theft and conversion against Zhu asserted derivatively by Blessed Land on Vivatech's behalf—were tried

11

to a jury.[6]  Zhu proffered various exhibits and related testimony in an attempt to show why he transferred the funds from Vivatech's account to his personal account.  The exhibits included (1) the Company Agreement, (2) the checks for "invoices" and "loans," (3) four IRS tax forms reporting payments received by Vivatech via PayPal from 2017 through 2020, (4) the email Zhu sent Appellees in March 2020 when he made the initial funds transfer, and (5) a parcel with a return address allegedly showing that Zheng had been selling Vivatech products from his home address.  Blessed Land objected to the proffered evidence on relevancy grounds.  The trial court sustained the objection, and Zhu put on his defense without the benefit of the excluded evidence. The jury reached a unanimous verdict on both claims, finding that Zhu committed theft and conversion, and awarded damages on the claims.

### *The trial court renders final judgment on the jury's verdict and sanctions Zhu and his counsel*

After a jury trial, the trial court rendered final judgment awarding damages to Blessed Land on its claims. The judgment also awarded Appellees attorney's fees as prevailing parties and as sanctions against Zhu and his trial counsel.

Zhu now appeals.  In six issues, Zhu contends that:  (1) the trial court erred in granting summary judgment on his individual and derivative claims for breach of fiduciary duty against Blessed Land, Zheng, and Steelman; (2) the trial court abused its discretion in excluding from the trial on Blessed Land's derivative claims for theft and conversion evidence relating to Zhu's intent in transferring funds from Vivatech's account to his personal account; (3) the trial court erred in awarding attorney's fees to Blessed Land, Zheng, and Steelman on Zhu's claims against them; (4) the trial court erred in awarding attorney's fees to Blessed Land on its

---

[6] During the pretrial conference, to simplify the issues at trial, Blessed Land agreed to nonsuit the derivative breach-of-contract and breach-of-fiduciary-duty claims against Zhu.

derivative claim for theft against Zhu; (5) the trial court erred in awarding attorney's fees to Appellees on the ground that Zhu strategically non-suited his claims against them; and (6) the trial court erred in awarding attorney's fees to Appellees as sanctions against Zhu and his trial counsel.

**Summary Judgment**

In his first issue, Zhu contends that the trial court erred in granting summary judgment on his individual and derivative claims for breach of fiduciary duty.

## I. Applicable law and standard of review

To prevail on a claim for breach of fiduciary duty, a plaintiff must prove that (1) the defendant owed the plaintiff a fiduciary duty, (2) the defendant breached its fiduciary duty, and (3) the defendant's breach either proximately caused injury to the plaintiff or resulted in a benefit to the defendant. *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 219 (Tex. 2017).

Here, Zhu asserted claims for breach of fiduciary duty, both directly in his individual capacity and derivatively on behalf of Vivatech. Each Appellee asserted various grounds for granting summary judgment on these claims.

Zheng asserted both no-evidence and traditional grounds for summary judgment on Zhu's individual claim for breach of fiduciary duty. Specifically, Zheng argued that he was entitled to no-evidence summary judgment because Zhu failed to produce evidence raising a fact issue on the second and third elements of the claim. And Zheng argued that he was entitled to the traditional summary judgment because he did not owe a fiduciary duty to Zhu as a matter of law. Zheng also asserted both no-evidence and traditional grounds for summary judgment on

13

Zhu's derivative claim for breach of fiduciary duty. Specifically, Zheng argued that he was entitled to no-evidence summary judgment because Zhu failed to produce evidence raising a fact issue on the second and third elements of the claim. And Zheng argued that he was entitled to traditional summary judgment because he did not owe a fiduciary duty to Vivatech as a matter of law.

Blessed Land asserted both no-evidence and traditional grounds for summary judgment on Zhu's individual claim for breach of fiduciary duty. Specifically, Blessed Land argued that it was entitled to no-evidence summary judgment because Zhu failed to produce evidence raising a fact issue on the second and third elements of the claim. And Blessed Land argued that it was entitled to traditional summary judgment because it did not owe a fiduciary duty to Zhu as a matter of law. Blessed Land asserted only no-evidence grounds for summary judgment on Zhu's derivative claim for breach of fiduciary duty, challenging the second and third elements of the claim.

Steelman asserted no-evidence grounds for summary judgment on Zhu's individual claim for breach of fiduciary duty. Specifically, Steelman argued that he was entitled to no-evidence summary judgment because Zhu failed to produce evidence raising a fact issue on the first and second elements of the claim. Steelman asserted the same no-evidence grounds for summary judgment on Zhu's derivative claim.[7]

---

[7] Steelman also moved for traditional summary judgment on Zhu's individual and derivative claims, but his traditional motion was narrowly tailored, seeking summary judgment on only two of the 21 specific breaches alleged by Zhu. Specifically, Steelman moved for summary judgment on Zhu's allegations that Steelman had breached his fiduciary duty by (1) "[w]rongfully interfering with and/or disrupting Vivatech's business and relationship with its customers by diverting sales, sales opportunities, and sales proceeds and/or revenue away from Vivatech for personal gain" and (2) "[r]efusing to reimburse Mr. Zhu for the expenses incurred on Vivatech's behalf, including the $120,000.00 expense for purchasing" the bubble wrap

14

The trial court granted summary judgment for each Appellee without specifying any grounds.

We review the trial court's summary judgment de novo, viewing the evidence in the light most favorable to Zhu, crediting evidence favorable to Zhu if reasonable jurors could, disregarding contrary evidence unless reasonable jurors could not, and resolving any doubts in Zhu's favor. *Zive v. Sandberg*, 644 S.W.3d 169, 173 (Tex. 2022). Applying this standard of review, we will affirm summary judgment on traditional grounds if Appellees met their burden to establish that there exists "no genuine issue as to any material fact" and that they are "entitled to judgment as a matter of law." Tex. R. Civ. P. 166a(c). We will affirm summary judgment on no-evidence grounds if Zhu failed to meet his burden to produce "summary judgment evidence raising a genuine issue of material fact" on any challenged element on which Zhu would have had the burden of proof at trial. *Id.* R. 166a(i).

## II. Analysis

In reviewing the trial court's summary judgment, we first consider Zhu's individual claims against all three Appellees, then Zhu's derivative claim against Zheng, and then Zhu's derivative claims against Blessed Land and Steelman.

### A. The trial court did not err in granting summary judgment on Zhu's individual claims against Appellees because Appellees did not owe a fiduciary duty to Zhu.

We begin by considering the trial court's summary judgment dismissing Zhu's individual claims for breach of fiduciary duty against Appellees. Appellees asserted traditional and no-evidence grounds challenging the first element of Zhu's individual claim for breach of

---

machines. Zhu does not challenge the trial court's grant of summary judgment on these specific allegations, so we do not address them here.

fiduciary duty—i.e., the existence of a fiduciary duty owed to Zhu individually. There are two types of fiduciary duty: formal and informal. *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 220 (Tex. 2019); *Meyer v. Cathey*, 167 S.W.3d 327, 330–31 (Tex. 2005) (per curiam). Zhu contends that Appellees owed him only a formal fiduciary duty as a member of Vivatech.

Under Texas law, the equal and co-managing members of a limited-liability company owe a fiduciary duty to the company, but they do not owe a fiduciary duty to each other. *See Bertucci v. Watkins*, 709 S.W.3d 534, 544 (Tex. 2025) ("[M]embers of limited-liability companies likewise do not owe formal fiduciary duties to fellow members simply because of their relationship as co-members."); *Dunster Live, LLC v. LoneStar Logos Mgmt. Co.*, No. 03-22-00014-CV, 2024 WL 291403, at *7 (Tex. App.—Austin Jan. 26, 2024, no pet.) (mem. op.) ("Texas law does not impose fiduciary duties between members of a limited liability company."); *Siddiqui v. Fancy Bites, LLC*, 504 S.W.3d 349, 365 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (declining to recognize fiduciary duty among members of LLC in part because members had equal ownership interests and none had contractual right to greater control over LLC than another member). However, Section 101.401 of the Business Organizations Code permits the company agreement of a limited-liability company to impose such duties. Tex. Bus. Orgs. Code § 101.401 ("The company agreement of a limited liability company may expand, restrict, or eliminate any duties, including fiduciary duties, and related liabilities that a member, manager, officer, or other person has to the company or to a member or manager of the company.").

Zhu contends that Vivatech's Company Agreement imposes fiduciary duties on Vivatech's members, which they owe to one another. Zhu argues that the Company Agreement

16

should be construed as imposing such duties because it (1) provides that each member will be a director of the company; (2) requires that the directors provide the members with quarterly reports; (3) requires member approval of member loans; (4) prohibits members from being concerned or financially interested in a similar or competing business; and (5) leaves in place provisions from the Business Organizations Code requiring notice and disclosure of self-dealing and interested transactions. Zhu further contends that his construction of the Company Agreement is supported by the deposition testimony of Steelman, who agreed that Zheng and he owed a fiduciary duty not only to Vivatech but to Zhu as well, and the deposition of Zheng, who agreed that he needed to be fair, honest, and equitable with Vivatech's members, including Zhu. We disagree that the Company Agreement imposes fiduciary duties that Vivatech's members owe to one another.

As an initial matter, we observe that Zheng is not a member or manager of Vivatech. The Company Agreement does not identify Zheng as a member or manager. The Company Agreement does not mention Zheng at all. There is nothing in the Company Agreement to support the imposition of a formal fiduciary duty upon Zheng to Zhu individually.

As discussed above, members of a limited-liability company do not owe duties to other members. Given this well-settled principle of Texas law, no basis exists for holding that a representative of a member owes fiduciary duties to other members unless the company agreement provides otherwise. *See Bertucci*, 709 S.W.3d at 544; *Dunster Live*, 2024 WL 291403; Tex. Bus. Orgs. Code § 101.401.

Moreover, Blessed Land is a Texas LLC, and its members, including Zheng, are afforded protection from any obligations or liabilities of the company. *See* Tex. Bus. Org. Code § 101.114. The Texas Supreme Court has noted that "[a] bedrock principle of corporate law is

17

that an individual can incorporate a business and thereby normally shield himself from personal liability for the corporation's contractual obligations." *Willis v. Donnelly,* 199 S.W.3d 262, 271 (Tex. 2006); *see* Tex. Bus. Orgs. Code §§ 101.002(a) (extending corporate liability-limitation statutes to LLCs and their members), .114 ("Except as and to the extent the company agreement specifically provides otherwise, a member or manager is not liable for a debt, obligation, or liability of a limited liability company, including a debt, obligation, or liability under a judgment, decree, or order of a court."). "Avoidance of personal liability is not only sanctioned by the law; it is an essential reason that entrepreneurs . . . choose to incorporate their businesses." *Willis*, 199 S.W.3d at 271.

Imposing a fiduciary duty upon Zheng to Zhu individually would upend established law by creating duties and liabilities where none have previously been held to exist. We hold that Zhu failed to produce evidence raising a fact issue as to whether Zheng owed a formal fiduciary duty to him individually and thus no-evidence summary judgment on Zhu's breach-of-fiduciary duty claim against Zheng was proper.

Turning to Steelman and Blessed Land, we hold that the Company Agreement does not impose upon them fiduciary duties that they owe to Zhu individually. No provision of the Company Agreement expressly states that the members owe each other a fiduciary duty, which distinguishes the Company Agreement from other agreements held to impose such a duty. *See, e.g.*, *Strebel v. Wimberly*, 371 S.W.3d 267, 276–78 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) (holding that managing member owed other member fiduciary duty when company agreement stated that "the Managers shall have fiduciary duties to the Company ***and the Members***" (emphasis added)); *Allen v. Devon Energy Holdings, L.L.C.*, 367 S.W.3d 355, 391 (Tex. App.—Houston [1st Dist.] 2012, pet. granted, judgm't vacated w.r.m.) (holding that

18

manager owed duty to members when company agreement provided that manager would be liable for "a breach of [his] duty of loyalty to the Company *or its members*" (emphasis added)). If the parties had intended for the Company Agreement to create a fiduciary relationship between the members of the company, they could have easily done so by directly stating as much. *See Abdullatif v. Choudhri*, 561 S.W.3d 590, 609 (Tex. App.—Houston [14th Dist.] 2018, pet. denied) (citing *David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450 (Tex. 2008) (per curiam)) (noting that when provisions of company agreement are unambiguous, courts must enforce them as written).

The provisions on which Zhu relies, read together with the other provisions as a whole in light of the Company Agreement's context and purpose, do not impose fiduciary duties owed to Vivatech's individual members. Under the Company Agreement, Zhu and the other members were equal and co-managing members. Everyone owned 25% of the company, and everyone was an equal director. Zhu himself admitted that "each member has a co-equal voice 'in the management and control of the affairs of [Vivatech], including management of the business, division of profits, disposition of shares, and distribution of assets on liquidation.'"

In a fiduciary relationship, the fiduciary must "place the interest of the other party before his own." *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 594 (Tex. 1992). Nothing about these equal relationships, as set forth and established by the Company Agreement, supports construing the agreement as requiring Steelman or Blessed Land to put Zhu's interests above their own. *Cf. Sohani v. Sunesara*, No. 01-20-00114-CV, 2022 WL 2976235, at *14 (Tex. App.—Houston [1st Dist.] July 28, 2022, no pet.) (mem. op.) ("One circumstance that the trial court could take into consideration [in finding an informal fiduciary relationship] was whether the members had an equal ownership interest or whether the

19

member allegedly owing fiduciary duties held a majority interest."); *Siddiqui*, 504 S.W.3d at 365.

Finally, Zhu cannot base the existence of formal fiduciary duties on the deposition testimony of Steelman and Zheng. Whether a formal fiduciary duty exists is a question of law. *Environmental Procs., Inc. v. Guidry*, 282 S.W.3d 602, 627 (Tex. App.—Houston [14tth Dist.] 2009, pet. denied). Thus, Steelman's and Zheng's testimony is not competent evidence of the existence or scope of any formal fiduciary duties. *See* Tex. R. Evid. 701; *Holland v. Memorial Hermann Health Sys.*, 570 S.W.3d 887, 895 (Tex. App.—Houston [1st Dist.] 2018, no pet.) ("It is generally true that a lay or fact witness's testimony is limited to their perception and the facts of which they have knowledge, and they may not testify as to personal opinions or legal conclusions unless designated as an expert."). The testimony of Steelman, a layperson, was given over the objections of counsel, constitutes an improper legal conclusion without foundation, and in any event, is not binding upon Blessed Land or Zheng. And Zheng's testimony that he intended to be fair, honest, and equitable with the members of Vivatech and act in Vivatech's best interest, also given over objections of counsel, does not constitute competent evidence or an admission of the existence or scope of any duties.

Under Texas law, a fiduciary relationship is an extraordinary one that must not lightly be created. *In re Estate of Poe,* 648 S.W.3d 277, 287 (Tex. 2022). We hold that Zhu failed to produce summary-judgment evidence raising a fact issue as to whether Steelman or Blessed Land owed a formal fiduciary duty to Zhu individually. Accordingly, we hold that Zhu failed to show that the trial court erred in granting summary judgment on his individual claims for breach of fiduciary duty, and we overrule this part of Zhu's first issue.

**B. The trial court did not err in granting summary judgment on Zhu's derivative claim against Zheng because Zheng did not owe a fiduciary duty to Vivatech.**

We now consider the trial court's summary judgment dismissing Zhu's derivative claim for breach of fiduciary duty against Zheng. For the same reasons we hold that Zhu failed to produce summary-judgment evidence that Zheng owed a formal fiduciary duty to Zhu individually, we hold that Zhu failed to produce summary-judgment evidence that Zheng owed a formal fiduciary duty to Vivatech. Unlike Steelman and Blessed Land, Zheng is not a member or manager of Vivatech. In the absence of evidence of such a formal relationship between Zheng and Vivatech, there is no basis for the imposition of a formal fiduciary duty on Zheng to Vivatech. We hold that the trial court did not err in granting summary judgment on Zhu's derivative claim for breach of fiduciary duty against Zheng, and we overrule this part of Zhu's first issue.

**C. The trial court erred in granting summary judgment on Zhu's derivative claims against Blessed Land and Steelman.**

Finally, we consider the trial court's summary judgment dismissing Zhu's derivative claims against Blessed Land and Steelman. Blessed Land and Steelman did not move for no-evidence summary judgment on the element of duty. It is undisputed that Blessed Land and Steelman owed a formal fiduciary duty to Vivatech as members and managers of the company. Instead, Blessed Land and Steelman both moved for no-evidence summary judgment on the element of breach, and Blessed Land also moved for no-evidence summary judgment on the element of damages. We consider each challenged element in turn.

21

### 1. Breach

In his response to Appellees' no-evidence motions, Zhu argued that Blessed Land and Steelman breached their formal fiduciary duties to Vivatech "by engaging in improper and unauthorized 'loan' and 'invoice' transactions." Zhu supported his response with (1) checks drawn on Vivatech's bank account, (2) deposition testimony from Steelman and Zheng, in which they provided important information about the checks, and (3) his own affidavit, in which he partially corroborated and partially disputed Steelman and Zheng's testimony.

With two exceptions not relevant here,[8] the checks are written by Steelman and made out to Zheng. They fall into three categories. First, there are five checks, totaling $177,802.00, for "loans."[9] Second, there are 19 checks, totaling $450,583.01, for "invoices."[10] Third, there are three checks, totaling $62,252.99, with nothing in the memo line.

In their depositions, Steelman and Zheng explained what the checks were for. They testified that the checks for "invoices" were reimbursement payments for the inventory Vivatech had sold on consignment from Blessed Land. They testified that, for at least some of the inventory,[11] Vivatech reimbursed Blessed Land at 5% above cost. They testified that they did not seek Zhu's approval to write the checks or otherwise inform him of the consignment sales. They testified that the "invoices" referenced in the memo line of the checks, as well as

---

[8] Two of the checks, totaling $76,250.00, are payments on the loan from Zhao.

[9] Specifically, those checks are for the amounts of $60,000.00; $41,253.00; $25,361.00; $25,573.00; and $25,615.00.

[10] Specifically, the checks for "invoices" are written for the amounts of $40,000.00; $5,185.00; $4,633.75; $18,857.06; $9,011.04; $9,221.75; $25,279.91; $20,346.46; $25,576.36; $26,121.93; $25,862.99; $24,425.01; $28,631.35; $37,882.23; $25,686.72; $27,660.23; $24,813.00; $25,244.71; $31,018.00; and $15,125.51.

[11] Specifically, for Invoices Nos. 1 and 2.

other information concerning the consignment sales, were reflected in Vivatech's records and that Zhu had access to these records.

Steelman and Zheng testified that the checks for "loans" were payments on a loan Vivatech had taken out from Zheng. Zheng was inconsistent about how much money he loaned to Vivatech, at one point testifying that he had loaned $260,000 and at another point appearing to testify that he had loaned $100,000. Steelman and Zheng were also inconsistent on whether the loan was memorialized in a promissory note or other written document. Steelman testified that he "believed" there was a written agreement, while Zheng testified that there was "no written agreement" and only an "oral agreement." They were also inconsistent on whether they had informed Zhu about the loan. Steelman testified that they did not seek Zhu's approval to take out the loan or otherwise inform him that Vivatech had borrowed money from Zheng. Zheng testified that he called Zhu about the loan and that Zhu would not agree to guarantee the loan but otherwise did not disapprove of Zheng lending Vivatech the money. However, Zheng admitted that he never obtained Zhu's "written approval" for the loan.

In his affidavit, Zhu testified that Appellees never informed him about the consignment sales or loan, that he never approved of the consignment sales or loan, and that, had Appellees asked, he would not have approved these transactions.

Zhu argues that this evidence raises a genuine issue of material fact as to whether Blessed Land and Zheng breached their formal fiduciary duties to Vivatech. Specifically, Zhu argues that this evidence shows that Blessed Land and Steelman breached their fiduciary duties in two ways. First, Zhu argues that the evidence shows that Blessed Land and Steelman breached their duty of loyalty by failing to obtain Zhu's approval for Vivatech to sell inventory on consignment from Blessed Land or to take out a loan from Zheng. Second, Zhu argues that

23

this evidence shows that Blessed Land and Steelman breached their duty of disclosure by failing to notify Zhu of the consignment sales or loan.  We agree with Zhu that this evidence raises a genuine issue of material fact as to whether Blessed Land and Steelman breached their formal fiduciary duty of loyalty to Vivatech.

Under Texas law, the managing member of a limited-liability company owes the company a duty of loyalty, including a duty to refrain from self-dealing.  *See Marchiani v. Shadle*, No. 03-22-00484-CV, 2024 WL 3586022, at *4 (Tex. App.—Austin July 31, 2024, no pet.) (mem. op.) (relying on manager's duty of loyalty to impose liability for diversion of LLC funds); *White v. White*, 704 S.W.3d 250, 269 (Tex. App.—El Paso 2024, no pet.) ("A claim of self-dealing is essentially a subset of a claim for breach of fiduciary duty."); *Mims v. Beall*, 810 S.W.2d 876, 880 (Tex. App.—Texarkana 1991, no writ) ("When the standard is a fiduciary obligation, any self-dealing is prohibited.").

Here, the consignment sales and loan are evidence of self-dealing.  Through these transactions, Blessed Land dealt benefits to itself:  (1) in the case of the consignment sales, the benefit of receiving 5% more than what it paid for the inventory sold by Vivatech, and (2) in the case of the loan, the benefit of the interest paid on the loan made to Vivatech by Zheng.[12]  *See In re KrisJenn Ranch, LLC*, 629 B.R. 589, 607 (Bankr. W.D. Tex. 2021) (holding that LLC member breached fiduciary duty by making loan to LLC without obtaining approval of

---

[12] To the extent Appellees have argued that the loans do not constitute self-dealing because the funds were loaned by Zheng (who is not a member) rather than Blessed Land (which is a member), we observe that the duty to refrain from self-dealing extends to self-dealing through "others whose interests are closely identified with those of the fiduciary."  *Dearing Inc. v. Spiller*, 824 S.W.2d 728, 733 (Tex. App.—Fort Worth 1992, writ denied); *see also KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 81 (Tex. 2015) ("Self-dealing has most commonly been observed in situations where the executive employs a legal contrivance to benefit himself, a close familial relation, or both.").

other member as required by company agreement), *aff'd in part, rev'd in part on other grounds*, 661 F. Supp. 3d 654 (W.D. Tex. 2023).

Self-dealing transactions are presumptively unfair. *Hrdy v. Second St. Props. LLC*, 649 S.W.3d 522, 539 (Tex. App.—Houston [1st Dist.] 2022, pet. denied). The burden is not on the principal to prove that a self-dealing transaction is unfair. *Id.* Rather, the burden is on the fiduciary to prove that a self-dealing transaction is fair. *Id.* Therefore, once Zhu produced evidence that the consignment sales and loan had taken place, the burden shifted to Blessed Land and Steelman to prove that these transactions were fair and reasonable. But Blessed Land and Steelman did not move for traditional summary judgment on the element of breach. They only moved for no-evidence summary judgment, and it is well established that "a party may not obtain a no-evidence summary judgment on an issue for which it bears the burden of proof." *Weekley Homes, LLC v. Paniagua*, 646 S.W.3d 821, 827 n.4 (Tex. 2022) (per curiam).

Blessed Land and Steelman argue that Zhu failed to preserve the presumption of unfairness and related burden shifting for our review because Zhu did not explicitly argue in his response that the burden had shifted. We disagree that Zhu failed to preserve the issue. In his response, Zhu described the transactions and produced evidence that they were never disclosed to him and that he never approved of them. Although Zhu did not use the words "self-dealing," "burden," or "fairness" in his response, the facts and arguments presented in his response describe self-dealing transactions, the fairness and reasonableness of which Appellees had the burden to prove. *See Li v. Pemberton Park Cmty. Ass'n*, 631 S.W.3d 701, 704 (Tex. 2021) (per curiam) (arguing substance of issue preserves issue for review "even if the party does not call the issue by name.").

25

Even if it was Zhu's burden to raise a fact issue as to the fairness and reasonableness of these transactions, we hold that the evidence, viewed in the light most favorable to Zhu, raises a fact issue. Zhu produced evidence of hundreds of thousands of dollars in payments from Vivatech to Blessed Land and Zheng. Steelman and Zheng testified about these payments, explaining that Vivatech was operating at a loss and that the consignment sales and loan were necessary for Vivatech to stay in business until the end of its lease. But they failed to provide crucial information about the transactions or supporting documents. The record does not contain any consignment agreement or other document setting out the terms by which Vivatech sold inventory on consignment from Blessed Land, and there is no evidence of the amount for which Vivatech sold the inventory. Likewise, the record does not contain a promissory note or other written document memorializing the terms of the loan from Zheng to Vivatech. The record contains little-to-no evidence of the loan's essential terms. There is no evidence of the loan's interest rate. There is no evidence of the loan's duration. The evidence is unclear as to the loan's principal. The lack of information about these transactions raises a fact issue as to the fairness and reasonableness of the consignment sales and loan.

Blessed Land and Steelman insist that all information necessary to prove the fairness and reasonableness of these transactions is contained in Vivatech's records. They further emphasize that Zhu at all times had access to these records. But they failed to attach these records to their summary-judgment motions, and they do not appear to be included in the clerk's record. And while Zhu concedes that he had access to some of Vivatech's records, he disputes that he had access to all of them. Viewed in the light most favorable to Zhu, we hold that the summary-judgment evidence raises a genuine issue of material fact as to whether Blessed Land and Steelman breached their formal fiduciary duty of loyalty to Vivatech. We hold

that the trial court erred to the extent that it granted summary judgment for Blessed Land on this claim based on the element of breach. Because breach is the only element of Zhu's derivative fiduciary-duty claim that Steelman challenged in his no-evidence motion, we hold that the trial court erred in granting summary judgment on this claim for Steelman and accordingly sustain this part of Zhu's first issue.

### 2. Damages

Finally, we consider damages. In its no-evidence motion, Blessed Land challenged the third element of Zhu's derivative claim, arguing that Zhu had failed to produce evidence that Blessed Land's breaches caused damage to Vivatech or resulted in a benefit to Blessed Land. On appeal, Zhu argues that the trial court erred to the extent it granted summary judgment on this basis because (1) he was not required to produce evidence of damages to Vivatech and (2) he did produce evidence of a benefit obtained by Blessed Land. We agree with Zhu.

When the principal seeks equitable relief rather than actual damages, the principal does not necessarily need to prove damages as a result of the fiduciary's breach of its duty. *Houle v. Casillas*, 594 S.W.3d 524, 553 (Tex. App.—El Paso 2019, no pet.) (citing *First United Pentecostal*, 514 S.W.3d at 220). Here, as a remedy for Blessed Land's alleged breaches, Zhu seeks equitable relief (in the form of an audit and accounting, disgorgement of profits, and forfeiture) rather than actual damages. Therefore, Zhu had no burden to produce evidence of damages to Vivatech to defeat Blessed Land's no-evidence motion. And, to the extent Zhu had a burden to produce evidence of a benefit improperly obtained by Blessed Land sufficient to raise

27

a fact issue, we hold that he did so. Specifically, Zhu produced evidence that Blessed Land obtained unknown profits from the consignment sales and unknown interest on the loan.

We hold that the trial court erred in granting summary judgment on Zhu's derivative claim against Blessed Land, and we accordingly sustain this part of Zhu's first issue.

## Exclusion of Evidence

In his second issue, Zhu contends that the trial court abused its discretion in excluding from the trial on Blessed Land's derivative claims for theft and conversion evidence showing why Zhu transferred the funds from Vivatech's account to his personal account.

The excluded evidence consisted of 37 exhibits, which can be divided into five categories: (1) the Company Agreement; (2) the checks for invoices and loans; (3) four IRS tax forms reporting payments received by Vivatech via PayPal from 2017 through 2020; (4) an email from Zhu to Zheng and Steelman dated March 17, 2020, the date of Zhu's initial funds transfer; and (5) a package with a return address that allegedly showed that Zheng had been selling Vivatech products from his home address.

These exhibits fell within the scope of the trial court's limine orders; specifically, the orders excluding evidence relating to Zhu's breach-of-fiduciary-duty claims as irrelevant to Blessed Land's claims for theft and conversion. At trial, Zhu offered the exhibits into evidence, and Blessed Land objected on relevancy grounds. Zhu then made the following offer of proof:

> Your Honor, at this time, we would formally offer into evidence Defendant's Exhibits 1 through 37. Those exhibits go to demonstrate Mr. Zhu's motive in terms of why he took the money out of the account. I understand the Court's rulings in pretrial excluding that evidence, but we would ask—I would invite the Court to reconsider those rulings and permit that testimony to go to the jury.

28

The trial court sustained Blessed Land's objection and excluded the exhibits:

> All right. Those are over—the objections are sustained to them based on the prior rulings by the Court on the various legal issues that have come up in pretrial motions and, actually, even before then with the motions for summary judgment, et cetera. And the Court is not inclined to go into areas that are not legally based on active pleadings that the Court would be able to consider.

Now, on appeal, Zhu challenges the trial court's ruling to exclude the exhibits, arguing that the exhibits were admissible to show that he lacked the requisite intent for theft and conversion. We review the trial court's evidentiary ruling for an abuse of discretion. *Enbridge Pipelines (E. Tex.) L.P. v. Avinger Timber, LLC*, 386 S.W.3d 256, 262 (Tex. 2012). In determining whether the trial court abused its discretion in excluding the exhibits proffered by Zhu, we look to see whether the trial court acted without regard to any guiding rules or principles. *Id.* We will uphold the trial court's ruling if there is any legitimate basis for doing so. *Id.*

We hold that there is a legitimate basis for upholding the trial court's ruling to exclude Zhu's exhibits—specifically, Zhu's failure to make an adequate offer of proof as required by Rule 103 of the Rules of Evidence. *See* Tex. R. Evid. 103(a). Under Rule 103, to claim error in a ruling to exclude evidence, the complaining party must inform the trial court of the substance of the excluded evidence by an offer of proof. *Id.* R. 103(a)(2). The basic principle behind Rule 103 is "party responsibility." Goode and Wellborn, 1 Texas Practice: Guide to the Texas Rules of Evidence § 103.2 (4th ed.). "The parties, not the judge, are responsible for the correct application of evidentiary rules; in order to preserve a complaint for appeal, the complaining party must have done everything necessary to bring the relevant evidentiary rule and its precise and proper application to the trial court's attention." *Resendez*

*v. State*, 306 S.W.3d 308, 313 (Tex. Crim. App. 2009); *see Michael v. NE CS First Nat'l, LP*, No. 02-23-00307-CV, 2024 WL 1579009, at *20 n.3 (Tex. App.—Fort Worth Apr. 11, 2024, no pet.) (mem. op.) (citing *Resendez* for "allocation of responsibility for preserving error" in civil context). Thus, the offer of proof "should reasonably and specifically summarize the evidence offered and state its relevance unless already apparent." *In re N.R.C.*, 94 S.W.3d 799, 806 (Tex. App.—Houston [14th Dist.] 2002, pet. denied).

Here, Zhu's offer of proof fails on both counts: It neither describes the actual content of the exhibits nor sufficiently explains their relevance with the specificity required by Rule 103. Zhu's counsel merely asserted, in conclusory fashion, that the exhibits "go to demonstrate Mr. Zhu's motive in terms of why he took the money out of the account." But he failed to explain how or why. And without such an explanation, the trial court had no basis for ruling that the exhibits were relevant to show Zhu lacked the requisite intent to commit theft and conversion.

We hold that Zhu has failed to show the trial court abused its discretion in excluding the proffered exhibits. Accordingly, we overrule Zhu's second issue.

**Fees on Zhu's Claims for Breach of Fiduciary Duty**

In his third issue, Zhu contends that the trial court erred in awarding attorney's fees to Zheng, Blessed Land, and Steelman as the prevailing parties on Zhu's individual and derivative breach-of-fiduciary-duty claims. Zhu does not dispute whether fees are recoverable by the prevailing party on these claims; it is undisputed that fees are recoverable by the prevailing party under Section 10.3 of the Company Agreement and Section 101.461 of the Business Organizations Code. *See* Tex. Bus. Orgs. Code § 101.461(b). Instead, Zhu argues that

30

the trial court erred in awarding attorney's fees because the trial court erred in granting summary judgment in the first place.  In light of our resolution of Zhu's first issue, we hold that (1) the trial court did not err in awarding attorney's fees to Zheng, Blessed Land, and Steelman as the prevailing parties on Zhu's individual claims for breach of fiduciary duty; and (2) the trial court did not err in awarding attorney's fees to Zheng as the prevailing party on Zhu's derivative claim for breach of fiduciary duty; but (3) the trial did err in awarding attorney's fees to Blessed Land and Steelman as the prevailing parties on Zhu's derivative claims for breach of fiduciary duty.  Accordingly, we overrule Zhu's third issue in part and sustain it in part.

### Fees on Blessed Land's Claim for Theft

In his fourth issue, Zhu contends that the trial court erred in awarding attorney's fees to Blessed Land on its derivative claim for theft.  Like his challenge to the fees awarded on his claims for breach of fiduciary duty, Zhu does not dispute whether fees are recoverable by the prevailing party on Blessed Land's derivative claim for theft; it is undisputed that fees are recoverable (indeed mandatory) under the Theft Liability Act (TLA).  Tex. Civ. Prac. & Rem. Code § 134.005(b) ("Each person who prevails in a suit under [the Theft Liability Act] shall be awarded court costs and reasonable and necessary attorney's fees.").  Instead, Zhu argues that the award of fees to Blessed Land as the prevailing party on its claim for theft must be reversed because the jury's finding in favor of Blessed Land on its theft claim must be reversed due to the trial court's harmful exclusion of evidence.  But, as we have already held, the trial court did not abuse its discretion in excluding the evidence offered by Zhu.  Because Zhu's argument for reversing the jury's finding in favor of Blessed Land fails, his argument for reversing the trial court's award of fees fails too.  Accordingly, we overrule Zhu's fourth issue.

31

**Fees on Zhu's Nonsuited Claims**

In his fifth issue, Zhu contends that the trial court erred in awarding attorney's fees to Blessed Land, Zheng, Steelman, and Secora on Zhu's nonsuited claims on the ground that Zhu strategically nonsuited the claims to avoid an unfavorable ruling on summary judgment.

The general rule is that a defendant is not a prevailing party entitled to attorney's fees when the plaintiff nonsuits his claim without prejudice. *Epps v. Fowler*, 351 S.W.3d 862, 864 (Tex. 2011). However, there is an important exception. If the trial court determines, on the defendant's motion, that the nonsuit was taken to avoid an unfavorable ruling on the merits, then the defendant is the prevailing party entitled to attorney's fees. *Id.* at 870.

Any number of factors may support a determination that the defendant is the prevailing party, such as a nonsuit taken only after the defendant files a motion for summary judgment. *Id.* at 870–71. Likewise, any number of factors may support the opposite determination, such as a nonsuit taken after discovery reveals previously unknown flaws in the plaintiff's claims. *Id.* at 871.

In this case, on the day Zhu's summary-judgment responses were due, he nonsuited all his claims against Secora, and he nonsuited his declaratory-judgment and theft claims against Blessed Land, Zheng, and Steelman. The trial court determined, on appellees' motion, that Zhu nonsuited his claims to avoid an unfavorable judgment. The trial court's determination is supported by sufficient evidence.

The record supports the trial court's determination that Zhu strategically nonsuited his declaratory-judgment claims to avoid an unfavorable ruling on summary judgment. As appellees argued in their motions for summary judgment, Zhu essentially recast his breach-of-fiduciary-duty claims as a request for declaratory relief under the UDJA. Zhu sought

32

56 separate judicial declarations that were identical to his breach-of-fiduciary-duty allegations. Regardless of the merits of Zhu's breach-of-fiduciary-duty claims, this was an improper use of the UDJA.

"There is no basis for declaratory relief when a party is seeking in the same action a different, enforceable remedy, and a judicial declaration would add nothing to what would be implicit or express in a final judgment for the enforceable remedy." *Universal Printing Co. v. Premier Victorian Homes, Inc.*, 73 S.W.3d 283, 296 (Tex. App.—Houston [1st Dist.] 2001, pet. denied); *see also Etan Indus., Inc. v. Lehmann*, 359 S.W.3d 620, 624 (Tex. 2011) (per curiam) ("The declaratory judgment claim must do more 'than merely duplicate the issues litigated' via the contract or tort claims.").

The UDJA provides for an award of costs and reasonable attorney's fees to a defending party. Tex. Civ. Prac. & Rem. Code § 37.009 ("In any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just."). The trial court's discretion in awarding fees under the UDJA is broad and not limited to cases tried and resulting in a judgment. *Falls County v. Perkins & Cullum*, 798 S.W.2d 868, 871 (Tex. App.—Fort Worth 1990, no writ); *see also Hong Kong Dev., Inc. v. Nguyen*, 229 S.W.3d 415, 452 (Tex. App.—Houston [1st Dist.] 2007, no pet.) ("One need not even . . . seek affirmative relief to be awarded attorney's fees under the [UDJA], as long as the award of fees is equitable and just."); *Save Our Springs All., Inc. v. Lazy Nine Mun. Util. Dist. ex rel. Bd. of Dirs.*, 198 S.W.3d 300, 318 (Tex. App.—Texarkana 2006, pet. denied) ("Either party may obtain attorney's fees [under the UDJA] regardless of which party is affirmatively seeking relief."); *Del Valle Indep. Sch. Dist. v. Lopez*, 863 S.W.2d 507, 512–13 (Tex. App.—Austin 1993, writ denied) ("[A]n award [of attorney's fees] under the [UDJA] is not limited to the prevailing

party."). Courts have accordingly upheld the award of attorney's fees and costs to a defendant after a plaintiff seeking a declaratory judgment nonsuited its claim before judgment on the merits. *See Falls County*, 798 S.W.2d at 871–72.

Here, under well-established law, there was no basis for Zhu's declaratory-judgment claims. Despite there never being any basis for the claims, Zhu waited until the day his response to appellees' summary-judgment motions was due to nonsuit the claims. We hold that the record supports the trial court's determination that Zhu nonsuited his declaratory-judgment claims to avoid an unfavorable ruling on summary judgment.

The record supports the trial court's determination that Zhu strategically nonsuited his theft claims to avoid an unfavorable ruling on summary judgment. The award of fees and costs to a prevailing party on a TLA claim is mandatory. Tex. Civ. Prac. & Rem. Code § 134.005(b) ("Each person who prevails in a suit under this chapter **shall** be awarded court costs and reasonable and necessary attorney's fees." (emphasis added)).

Courts have awarded fees and costs to a defendant following a plaintiff's nonsuit of a TLA claim without prejudice where the dismissal was strategically timed to avoid an unfavorable ruling on the merits. *Moore v. Amarillo-Panhandle Humane Soc'y*, 541 S.W.3d 403, 405–06 (Tex. App.—Amarillo 2018, pet. denied) (upholding fee award to defendant after plaintiff nonsuited TLA claim without prejudice before summary judgment hearing to avoid unfavorable ruling on merits); *BBP Sub I LP v. Di Tucci*, No. 05-12-01523-CV, 2014 WL 3743669, at *4 (Tex. App.—Dallas July 29, 2014, no pet.) (mem. op.) (upholding award of fees to defendant as prevailing party under TLA after plaintiff voluntarily dropped TLA claim in response to summary-judgment motion).

The fact that a nonsuit is taken only after a summary-judgment motion has been filed is a factor that has repeatedly been held to support such an inference. *See, e.g.*, *Epps*, 351 S.W.3d at 870–71 (court may infer that plaintiff who nonsuits claim only after defendant files motion for summary judgment does so in order to avoid summary judgment); *BBP Sub I LP*, 2014 WL 3743669, at \*4 (plaintiff's amended pleading dropping TLA claim, filed "closely on the heels" of defendant's summary-judgment motion, supported inference that nonsuit was filed to avoid unfavorable ruling on merits). That is what occurred here. It was only after appellees filed their summary-judgment motion that Zhu abandoned his TLA claims.

This is not a case where a nonsuit occurred after discovery revealed previously unknown flaws in Zhu's claims. The only explanation offered by Zhu for the timing of his decision to nonsuit his theft claims was Zhu's alleged inability to obtain records from State Farm to prove theft of insurance proceeds. But those records had no bearing on his theft claims against Blessed Land or Zheng because Zhu did not allege that Blessed Land or Zheng handled any insurance claim or shared in any insurance proceeds. To the extent the records were relevant to his theft claims against Steelman and Secora, Zhu's inability to obtain the records still does not sufficiently explain the timing of the nonsuit—on the day his response was due and not, say, shortly after he discovered he would not be able to obtain the records. We hold that the record supports the trial court's determination that Zhu nonsuited his theft claims to avoid an unfavorable ruling on summary judgment. Accordingly, we overrule Zhu's fifth issue.[13]

---

[13] We note that Zhu contends that there is a conflict between the trial court's Order on Motions for Attorney's Fees (Fee Order) and the trial court's Final Judgment. Specifically, Zhu contends that while the Fee Order awards attorney's fees on the basis of a strategic nonsuit, the Final Judgment does not and therefore conflicts with the Fee Order. And because the terms of the Final Judgment control, Zhu argues, no fees were awarded based on his strategic nonsuit. We disagree. There are no inconsistent findings. The trial court made its findings in the Fee

## Fees as Sanctions Against Zhu and His Trial Counsel

In his sixth issue, Zhu contends that the trial court abused its discretion in imposing sanctions against him and his trial counsel under Rule 13 of the Rules of Civil Procedure and under Chapter 10 of the Civil Practice and Remedies Code.

## I.  Applicable law and standard of review

Rule 13 of the Rules of Civil Procedure and Chapter 10 of the Civil Practice and Remedies Code authorize a trial court to sanction an attorney and a party for filing pleadings that lack a reasonable basis in fact or law.  Rule 13 provides, as relevant here:

> The signatures of attorneys or parties constitute a certificate by them that they have read the pleading, motion, or other paper; that to the best of their knowledge, information, and belief formed after reasonable inquiry the instrument is not groundless and brought in bad faith or groundless and brought for the purpose of harassment. . . .  If a pleading, motion or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, after notice and hearing, shall impose an appropriate sanction available under Rule 215, upon the person who signed it, a represented party, or both.

Tex. R. Civ. P. 13.  Rule 13 authorizes the imposition of sanctions against an attorney or party who files a pleading that is groundless and either brought in bad faith or brought for the purpose of harassment.  *Sullivan v. Arguello Hope & Assocs., PLLC*, No. 03-18-00144-CV, 2018 WL 6424200, at *2 (Tex. App.—Austin Dec. 7, 2018, no pet.) (mem. op.).  Sanctions for a violation of Rule 13 are mandatory and may include an order requiring the attorney and party to

---

Order and expressly stated that the amount of fees awarded would be determined later.  The trial court then expressly referenced the Fee Order and the findings made therein in its Final Judgment and awarded an amount of attorney's fees consistent with the evidence that was presented.  The fees awarded in the Final Judgment thus include fees based on Zhu's strategic nonsuit of claims.

pay the reasonable attorney's fees and expenses incurred by the opposing party as a result of the violation of Rule 13. *See* Tex. R. Civ. P. 13 & 215.2(b)(2), (8).

> Chapter 10 of the Civil Practice and Remedies Code similarly provides:

> The signing of a pleading or motion as required by the Texas Rules of Civil Procedure constitutes a certificate by the signatory that to the signatory's best knowledge, information, and belief, formed after reasonable inquiry:

> (1) the pleading or motion is not being presented for any improper purpose, including to harass or to cause unnecessary delay or needless increase in the cost of litigation;

> (2) each claim, defense, or other legal contention in the pleading or motion is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

> (3) each allegation or other factual contention in the pleading or motion has evidentiary support or, for a specifically identified allegation or factual contention, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

> (4) each denial in the pleading or motion of a factual contention is warranted on the evidence or, for a specifically identified denial, is reasonably based on a lack of information or belief.

Tex. Civ. Prac. & Rem. Code § 10.001. Under Chapter 10, a party is not required to specifically show bad faith or malicious intent on the part of the attorney, but only that the attorney certified that he made a reasonable inquiry into all of the allegations, when he did not, and that he certified that all of the allegations in the petition had evidentiary support, or were likely to have evidentiary support, when some allegations did not. *Low v. Henry*, 221 S.W.3d 609, 617 (Tex. 2007). Sanctions for a violation of Chapter 10 may include an award to the prevailing party of all costs for inconvenience, harassment, and out-of-pocket expenses incurred or caused by the subject litigation. Tex. Civ. Prac. & Rem. Code § 10.002.

37

We review an award of sanctions for an abuse of discretion. *Nath v. Texas Children's Hosp.*, 446 S.W.3d 355, 361 (Tex. 2014) (sanctions under Chapter 10); *Robson v. Gilbreath*, 267 S.W.3d 401, 405 (Tex. App.—Austin 2008, pet. denied) (sanctions under Rule 13).

## II. Analysis

Zhu contends that the sanctions award must be reversed for two reasons: (1) because the trial court failed to hold an evidentiary hearing on appellees' motion for sanctions and (2) because the evidence does not support a finding that Zhu and his trial counsel committed sanctionable conduct.

### A. The trial court held an evidentiary hearing.

"Both Rule 13 and Section 10.001 require an evidentiary hearing to enable the trial court 'to make the necessary factual determinations about the motives and credibility of the person signing the allegedly groundless pleading.'" *Orbison v. Ma-Tex Rope Co., Inc.*, 553 S.W.3d 17, 35 (Tex. App.—Texarkana 2018, pet. denied).

Zhu contends that the trial court failed to hold an evidentiary hearing on appellees' motion for sanctions. We disagree. The record reflects that the trial court held an evidentiary hearing, which was conducted by Zoom by the agreement of all parties, including Zhu.

At the hearing, all parties, including Zhu, submitted evidence for the trial court's consideration. Appellees submitted excerpts from Zhu's deposition and directed the trial court to specific pleadings filed by Zhu, including the sworn declarations that he submitted in response to the summary-judgment motions. Zhu did not object to any of the evidence submitted. Zhu in

38

turn submitted the transcript of his own deposition, along with an affidavit from his counsel and directed the court to specific pleadings and orders in the case. The parties asked the trial court to consider their respective submissions in deciding the motion. The trial court's sanctions order reflects that it did so.

Moreover, at the time the trial court heard the sanctions motion, it had already granted summary judgment on Zhu's breach-of-fiduciary-duty claims, determined that Zhu nonsuited his other claims to avoid an unfavorable summary-judgment ruling, and presided over the pretrial conference and jury trial, where it had observed and assessed Zhu's credibility. The trial court could properly take judicial notice of the case file and make credibility determinations in ruling on the sanctions motion. *See R.M. Dudley Constr. Co. v. Dawson*, 258 S.W.3d 694, 710 (Tex. App.—Waco 2008, pet. denied) (citing *Elkins v. Stotts-Brown*, 103 S.W.3d 664, 667 (Tex. App.—Dallas 2003, no pet.)) (noting that in some circumstances trial court may be able to make determination regarding motives and credibility of person signing petition by taking judicial notice of items in case file).

### B. The record supports the award of sanctions against Zhu and his counsel.

Upon consideration of the evidence, the trial court found (among other things) that Zhu's third-party claims were not well grounded in fact after reasonable inquiry and were interposed for an improper purpose, such as to harass, cause unnecessary delay, or cause a needless increase in the cost of litigation. The trial court further found that Zhu's counsel had failed to reasonably investigate the facts and law in several material respects. Sufficient evidence exists to support the trial court's findings. Specifically, the record supports findings that (1) Zhu made groundless claims for reimbursement that were brought in bad faith or for the

39

purpose of harassment, (2) Zhu's trial counsel failed to make a reasonable inquiry before filing Zhu's third-party petition, and (3) Zhu's counsel should jointly bear responsibility for the fees awarded against Zhu.

> **1. The record supports a finding that Zhu made groundless claims for reimbursement brought in bad faith or for the purpose of harassment.**

Appellees contend that Zhu's third-party petition contained four claims for reimbursement that were groundless and brought either in bad faith or for the purpose of harassment. Sufficient evidence exists to support a finding that these reimbursement claims were groundless and brought for an improper purpose. We discuss each claim in turn.

First, in support of their motion for sanctions, Appellees argued that Zhu falsely alleged that he paid $120,000 for machinery for Vivatech. In his third-party petition, Zhu alleged that he was entitled to be reimbursed $120,000 because he used his personal funds to acquire the machines for Vivatech. But after written discovery and two days of deposition testimony, Zhu admitted that the funds used to acquire the machines were Vivatech's, not his:

> Q: And you're also seeking to recover the "$120,000 in costs associated with the purchase of the bubble wrap machine and bubble poly mailer machine, raw materials, equipment, and tools." Did I read that correctly? [referring to Zhu's Third-Party Complaint]
>
> A: Yes, but this one I think, you know, my lawyer misunderstood. It's not for the—bubble wrap machines because I didn't—read this document for this filing.
>
> Q: So you're not seeking to recover $120,000 in costs associated with the purchase of the bubble wrap machine and bubble poly mailer machine, raw materials, equipment and tools—
>
> A: No.

Q: Because that was actually paid for by Vivatech, was it not?

A: Yes, that's paid by Vivatech. Yes.

Zhu responds that this allegation, even if untrue, does not support sanctions because it was the result of a miscommunication between him and his trial counsel and he withdrew it during his deposition. We disagree.

On this record, the trial court could have disbelieved Zhu's testimony that his lawyer had "misunderstood" him or could have otherwise determined that Zhu and his trial counsel knew or should have known the allegation was false when made. The allegation was contradicted not only by Zhu's deposition testimony, but also by documents produced during discovery, including the general ledger and other financial records of Vivatech, and an e-mail produced by Zhu that he sent to the other members of Vivatech in November 2017 confirming the cost of the machines and that the cost had been paid by Vivatech. And even after Zhu in his deposition confirmed the falsity of the allegation, it was never formally removed from Zhu's third-party petition.

Second, in support of their motion for sanctions, appellees argued that Zhu falsely alleged that he paid $30,000 to engineers to research and procure bubble-wrap machinery from China. In his third-party petition, Zhu alleged that he personally paid and was entitled to be reimbursed for $30,000 in costs he paid to engineers to research and procure the machinery.

In response to discovery requests asking for documents to support this allegation, Zhu produced a single document—an invoice, dated June 18, 2018, that Zhu had prepared on his home computer over five months after the machines had been procured and that he could not prove he had ever submitted to Vivatech. Zhu produced no backup documentation to support the invoice and produced no evidence that he had personally paid for any of the alleged costs

41

reflected in the invoice. This alleged procurement cost was not reflected in the general ledger or other financial records of Vivatech that were produced to Zhu's counsel early in the lawsuit, and its veracity was called into question when Zhu admitted in his deposition that he did not disclose this cost to the other members of Vivatech when he sent the November 2017 e-mail referenced above, in which he confirmed the purchase of the machines, the total cost, and that the machines were ready to be shipped and installed. It was undisputed that Zhu had procured the machinery by November 2017, and it was shipped to Vivatech by late January 2018, over five months before the date of the invoice. Zhu explained the delay by testifying that he decided "later" that he should be reimbursed for this alleged cost and that he was free to seek payment from Vivatech at "any time." On this record, the trial court could have disbelieved Zhu's explanation for the delay.

Third, in support of their motion for sanctions, Appellees argued that Zhu falsely alleged that he paid for Vivatech's insurance without being reimbursed. In his third-party petition, Zhu alleged that he personally paid and was entitled to reimbursement for Vivatech's insurance. Although Zhu did make Vivatech's initial premium payment when the company was formed, the documents produced by Zhu himself during discovery included a check to Zhu from Vivatech with a memo notation stating that the check was to reimburse Zhu for the initial premium payment. Moreover, the fact that Zhu had been reimbursed for the initial premium payment and that Vivatech itself paid for its insurance was corroborated by company banking and financial records produced to Zhu and his counsel during discovery.

Fourth, in support of their motion for sanctions, Appellees argued that Zhu falsely alleged he paid and was entitled to reimbursement for rent. In his third-party petition, Zhu claimed he was entitled to be reimbursed for rent he paid to Vivatech for ZipcodeXpress, a

42

company that for a time subleased office space from Vivatech. Zhu admitted in his deposition that the rent paid on the sublease was actually paid by ZipcodeXpress, not by him personally, and that he was but one of the members of ZipcodeXpress:

> Q: The funds that were paid to Vivatech for the ZipcodeXpress sublease, those were not your personal funds, were they?
>
> A: No.
>
> Q: Those were monies that belonged to ZipcodeXpress. Correct?
>
> A: Yes.
>
> Q: And ZipcodeXpress you mentioned earlier in the first part of your deposition was a company in which Blessed Land Investment and two other individuals had invested. Correct?
>
> A: Yes.

Checks written to Vivatech on the account of ZipcodeXpress further support a finding that Zhu falsely claimed to have personally paid the rent. And, although Zhu asserts on appeal that he was the sole shareholder of ZipcodeXpress after 2019, that was after the date rent was paid and after Blessed Land and other shareholders had exited ZipcodeXpress. On this record, no factual basis exists for Zhu to have claimed these funds.

None of Zhu's claims above relating to an alleged right to reimbursement were relevant to or recoverable in connection with the third-party claims he asserted. These amounts, if recoverable at all, were recoverable from Vivatech and not its members. Appellees argued and the trial court could have reasonably determined that Zhu made these claims for reimbursement to make his transfer of $43,000 appear justified and de minimis in relation to what he claimed to be owed in the hope of exerting leverage over the other members and Zheng. Thus, the record

supports a finding that the reimbursement claims were groundless and brought in bad faith or for the purpose of harassment.

## 2. The record supports a finding that Zhu's trial counsel failed to make a reasonable inquiry before filing Zhu's third-party petition.

By filing the third-party petition in this case, Zhu's counsel certified that to the best of his knowledge, information, and belief, the factual contentions in the pleading had or were likely to have evidentiary support. For the reasons stated above, sufficient evidence exists to support the trial court's finding that Zhu's counsel failed to reasonably investigate the factual contentions in the pleading, specifically, the contentions in support of Zhu's claims for reimbursement.

Further, Zhu testified that his counsel never had him review the third-party petition to confirm its accuracy before it was filed. On the first day of his deposition, when first asked whether he had ever seen the third-party petition, Zhu testified that he had not. Then, after a break in the deposition during which he conferred with his counsel, Zhu returned to the deposition and immediately volunteered before questioning resumed that he had reviewed the pleading before it was filed. On the second day of his deposition, however, Zhu again testified, this time without prompting, that he had not reviewed the third-party petition: "I didn't—read this document for this filing." Thus, Zhu's deposition testimony further supports a finding that Zhu's counsel did not make a reasonable inquiry before filing Zhu's third-party petition.

### 3. The record supports holding Zhu's counsel jointly responsible for fees for failure to advise Zhu of the risk of asserting his claims for theft and declaratory judgment.

Zhu's deposition testimony supports a finding that Zhu's counsel never advised Zhu that Blessed Land and Zheng were seeking to recover their costs and attorney's fees for the claims Zhu had asserted against them. Zhu testified:

> Q: Do you understand, Mr. Zhu, that in connection with this lawsuit the other parties are asking the Court to require you to pay their attorney's fees and costs?
>
> A: I don't know.
>
> Q: Were you aware that one of the claims made in the lawsuit is that you have filed false claims and as a result our clients should get to recover all of the money they spend in having to continue on in this case?
>
> A: I don't know that.

Without this knowledge, it would have been reasonable for Zhu to believe he had nothing to lose by continuing to pursue his third-party claims. Zhu testified that he had not been invoiced for any of the work in the case, so Zhu's counsel was presumably representing Zhu under a contingent fee arrangement. If so, it cost Zhu nothing to continue to pursue his claims. Zhu's counsel chose to file claims under the TLA and UDJA, both of which allow for the recovery of attorney's fees by a defending party. On this record, it was reasonable for the trial court to hold Zhu's counsel jointly responsible for the fees awarded on these claims.

Based on the foregoing, the trial court did not abuse its discretion in determining that Zhu and his counsel brought and pursued groundless claims for an improper purpose. Accordingly, we overrule Zhu's sixth issue.

45

## CONCLUSION

With regard to the trial court's summary judgment on Zhu's individual and derivative claims for breach of fiduciary duty, we (1) affirm the part of the summary judgment that dismisses Zhu's individual claims against all three Appellees, and (2) affirm the part of the summary judgment that dismisses Zhu's derivative claim against Zheng, but (3) reverse the part of the summary judgment that dismisses Zhu's derivative claims against Blessed Land and Steelman.

With regard to Blessed Land's derivative claims for conversion and theft, we affirm the parts of the trial court's final judgment adopting the jury's findings that Zhu converted Vivatech's property and that Zhu committed theft of Vivatech's property.

With regard to the parts of the trial court's final judgment awarding attorney's fees and sanctions, we (1) affirm the part ordering that Appellees are entitled to an award of attorney's fees as the prevailing parties on Zhu's individual claims for breach of fiduciary duty, and (2) affirm the part ordering that Zheng is entitled to an award of attorney's fees as the prevailing party on Zhu's derivative claim for breach of fiduciary duty, but (3) reverse the part ordering that Blessed Land and Steelman are entitled to an award of attorney's fees as the prevailing parties on Zhu's derivative claims for breach of fiduciary duty. We affirm the part ordering that Blessed Land is entitled to an award of attorney's fees as the prevailing party on its derivative claim for theft. We affirm the part ordering that Appellees and Secora are entitled to an award of attorney's fees as the prevailing parties on Zhu's nonsuited claims for theft and declaratory judgment. And we affirm the part awarding Appellees and Secora their attorney's fees as sanctions against Zhu and his trial counsel.

46

We remand the case to the trial court for further proceedings consistent with our opinion, including further proceedings on Zhu's derivative claims for breach of fiduciary duty against Blessed Land and Steelman and, because fees were awarded as a lump sum and not segregated, a new hearing on attorney's fees.

_____

Maggie Ellis, Justice

Before Justices Theofanis, Crump, and Ellis
  Concurring and Dissenting Opinion by Justice Crump

Affirmed in Part; Reversed and Remanded in Part

Filed:  June 30, 2026